

**ORDERED in the Southern District of Florida on August 2, 2012.**

A. Jay Cristol, Judge
United States Bankruptcy Court

---

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| In re | Chapter 11 |
| ALL AMERICAN SEMICONDUCTOR, INC., et at., | Jointly Administered under Case No. 07-12963-BKC-LMI |
| Debtors. | Case Nos. 07-12965 through 07-12967-BKC¬LMI; Case Nos. 0742969 through 07-12974- BKC-LMI; Case Nos. 07-12976 through 07- 12979-BKC-LMI; Case Nos. 0742981 through 07-12991-BKC-LMI; Case No, 07-12993- BKC-LMI; Case Nos. 07-12995 through 07- 13002-BKC-LMI |
| AASI CREDITOR LIQUIDATING TRUST, By and Through Kenneth A. Welt, Liquidating Trustee, pursuant to the confirmed Third Amended Plan of Liquidation of The Official Committee of Unsecured Creditors, | |
| Plaintiff, | Adv. No. 09-1443-BKC-AJC-A |
| vs. | |
| SAMSUNG SEMICONDUCTOR, INC. | |
| Defendant. | |
| _____/ | |

# MEMORANDUM OPINION AND ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT AS TO NEW VALUE DEFENSE

This matter came before the Court for hearing on June 7, 2012 upon the Motion for Partial Summary Judgment [ECF # 107] ("<u>Defendant's Motion</u>") filed by Samsung Semiconductor, Inc. (the "Defendant") and the Cross-Motion for Partial Summary Judgment filed by AASI Creditor Liquidating Trust [ECF # 120] ("<u>Plaintiff's Cross-Motion</u>"), as well as the Reply of Defendant [ECF # 154] and the Reply of Plaintiff [ECF # 155]. The Plaintiff and Defendant both argued that they are entitled to summary judgment and the matter has been fully briefed.

The Court, having reviewed the file and submissions of all interested parties, considered the arguments presented, and otherwise been duly informed, DENIES Defendant's Motion and GRANTS Plaintiff's Cross-Motion in part.

## I.    BACKGROUND

1. On April 25, 2007 (the "Petition Date"), the captioned debtors (collectively, the "Debtors"), filed voluntary petitions for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2. By order dated April 10, 2009, the Court confirmed the Official Committee of Unsecured Creditors' Third Amended Plan of Liquidation [ECF No. 1175 in the Main Case], which transferred all avoidance actions of the Debtors to Plaintiff.

3. On April 23, 2009, Plaintiff commenced the instant Adversary Proceeding by filing a complaint, which sought to avoid certain preferential and/or fraudulent transfers received by the Defendant prepetition [ECF No. 1]. After motion practice and resolution on Defendant's motion to dismiss, on or about July 13, 2009, Plaintiff filed an Amended Complaint alleging (i) avoidance and recovery of preferential transfers pursuant to Sections 547, 550 and 542 of the

Code; (ii) avoidance and recovery of fraudulent transfers pursuant to Sections 548, 550 and 542 of the Code; and (iii) disallowance of Defendant's claims, if any, in the above-captioned bankruptcy cases pursuant to Section 502(d) of the Code. [ECF No. 18.]

4. In its Answer to the Amended Complaint, Defendant asserted several defenses, including the new value defense codified by section 547(c)(4)(B).

5. Discovery remains open and ongoing; there is no trial date scheduled at this time.

## II. SUMMARY OF THE PARTIES' ARGUMENTS

Plaintiff and Defendant have both submitted declarations from their respective accountants with charts summarizing their respective positions concerning the Defendant's preference exposure after consideration of the available defenses. Plaintiff and Defendant agree both as to the amount of alleged preference payments it made to Defendant during the preference period and the amount of new value that was extended by Defendant to Plaintiff during the preference period. The parties also agree that during the preference period (i) Defendant drew down a $1 million letter of credit (the "LOC") that Plaintiff previously procured from its lender ("Harris Bank") in favor of Defendant, (ii) Defendant applied the $1 million LOC proceeds to pay in part for the new value Defendant extended to Plaintiff, and (iii) Harris Bank subsequently set off $1 million in cash from Plaintiff's bank account that Plaintiff had pledged to secure the LOC.

The issue before the Court involves the effect of Defendant's draw-down of the LOC on Defendant's new value defense. Defendant argues that its draw-down of the LOC is irrelevant to its new value defense, and that it therefore is entitled to credit for all of the new value it extended to Debtor during the preference period without any reduction for the $1 million it received as partial payment for the new value. In support of this position, Defendant relies on what it concedes is the "minority position" among the courts of this country that holds that there is no

requirement that new value must "remain unpaid" in order for it qualify under 11 U.S.C. § 547(c)(4).

Plaintiff, on the other hand, contends that Defendant's new value defense must be reduced by the $ 1 million proceeds of the LOC that Defendant received as partial payment for the new value. As support for its position, Plaintiff relies on the "majority rule" stated in the Eleventh Circuit Court of Appeal's decision in *Charisma Investment Co., N.V. v. Airport Systems, Inc.* (*In re Jet Florida System, Inc.*), 841 F.2d 1082 (11th Cir. 1988), that limits a creditor's new value defense to the new value that remains unpaid. Plaintiff argues that because Harris Bank set-off the full $1 million amount of the LOC against Plaintiff's bank account at Harris Bank, the impact of Defendant's draw-down of the LOC was no different than if Plaintiff had paid the $1 million directly to Defendant.

Plaintiff and Defendant's respective accountant's declarations also contain contrary statements regarding the effect on Defendant's new value defense of $198,969 in returns of merchandise that Debtor made to Defendant during the preference period (the "Returns"). Plaintiff contends that the Returns were received by Defendant after it provided new value to Debtor, and that the Returns should correspondingly reduce the amount of new value available as a defense. Defendant disputes that the Returns related to any of the new value that it provided to Debtor during the preference period, and argues that the Returns should not impact the available new value defense.

### III.   UNDISPUTED FACTS

The Court finds that there is no genuine dispute as to the following facts, and therefore adopts these facts for purposes of this decision:

1.  During the preference period, Debtor made transfers to Defendant totaling $4,933,139 (the "Preference Payments").

2.  During the preference period Defendant extended $3,988,050 in new value to Plaintiff (the "Claimed New Value").

3.  On or about April 6, 2007, shortly before the Petition Date, Defendant drew down on a $1 million LOC from Harris Bank, N.A., Plaintiff's secured lender, that Plaintiff previously had procured for the benefit of Defendant. Defendant applied the proceeds of the LOC as partial payment of the Claimed New Value.

4.  After Defendant drew down on the LOC, Harris Bank set-off the full $1 million amount of the LOC against $1 million in cash from Plaintiff's bank account that Plaintiff had pledged to secure the LOC.

## IV. CONCLUSIONS OF LAW

With respect to the $1 million draw down on the LOC and the cross motions for summary judgment before the Court, there are no genuine issues of material fact, and it is therefore appropriate to resolve the question regarding the scope of Defendant's new value defense as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Bruno v. Mona Lisa at Celebration, LLC (In re Mona Lisa at Celebration LLC)*, 436 B.R. 179, 188 (Bankr. M.D. Fla. 2010).

Section 547(c)(4) of the Bankruptcy Code, 11 U.S.C. § 547(c)(4), sets forth the new value exception to a preferential transfer, and provides, in relevant part, that a trustee may not avoid under this section a transfer --

> (4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor –
>
> (A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.

In *Charisma Investment Co., N.V. v. Airport Systems, Inc.* (*In re Jet Florida System, Inc.*), 841 F.2d 1082 (11th Cir. 1988), the Eleventh Circuit Court of Appeals set forth the requirements of a new value defense under 11 U.S.C. § 547 (c)(4): "(1) that the creditor must have extended new value after receiving the challenged payments, (2) that the new value must have been unsecured, and (3) that the new value must remain unpaid." *Id.* at 1083. *Jet Florida* is controlling precedent in this Circuit. *See*, *e.g.*, *Braniff, Inc. v. Sundstrand Data Control, Inc.* (*In re Braniff*), 154 B.R. 773, 783-85 (Bankr. M.D. Fla. 1993) (acknowledging the split of authority on whether new value must remain unpaid, but embracing *Jet Florida* as controlling law in the Eleventh Circuit); *Johnson v. Smith Bros. Oil Co., Inc.,* (*In re Empire Pipe and Dev., Inc.*), 152 B.R. 1012, 1015 (Bankr. M.D. Fla. 1993) (concluding that, consistent with *Jet Florida*, a creditor cannot get credit for any new value unless the shipment remains unpaid); *Jensen v. Pen Air Cond., Inc.* (*In re Winsco Builders, Inc.*), 156 B.R. 98, 101 (Bankr. M.D. Fla. 1993) (citing to *Jet Florida* requirement that new value remain unpaid); *Drake v. Peeples* (*In re Topgallant Lines, Inc.*)*,* 1996 WL 33366600 (Bankr. S.D. Ga. 1996) (noting *Jet Florida* as *stare decisis* and controlling); *Crews v. Nat'l Coating, Inc.* (*In re Nat'l Aerospace, Inc.*), 219 B.R. 625, 629 (Bankr. M.D. Fla. 1998) (following *Jet Florida*); *Jones v. Ryder Integrated Logistics, Inc.* (*In re Jotan, Inc.*), 264 B.R. 735, 754-55 (Bankr. M.D. Fla. 2001) (same); *Moltech Power Sys., Inc. v. Truelove & Maclean* (*In re Moltech Power Sys., Inc.*), 326 B.R. 179, 183-84 (M.D. Fla. 2005) (same); *Menotte v. Oxyde Chems., Inc.* (*In re JSL Chem. Corp.*), 424 B.R. 573, 583 (Bankr. S.D. Fla. 2010) (Hyman, J.) (listing the elements of the new value defense consistent with *Jet Florida*).

The majority of the Circuit Courts of Appeal, including the Third, Fifth, Seventh, Eighth and Ninth Circuits, have expressly adopted *Jet Florida*'s holding that new value must remain unpaid by an otherwise unavoidable transfer.  *See, e.g.*, *New York City Shoes, Inv. v. Bentley Int'l, Inc.* (*In re New York City Shoes, Inc.*), 880 F.2d 679, 680 (3rd Cir. 1989); *Kroh Bros. Dev. Co. v. Continental Constr. Eng.'g.* (*In re Kroh Bros. Dev. Co.*), 930 F.2d 648, 653 (8th Cir. 1991); *In re Prescott*, 805 F.2d 719, 731 (7th Cir. 1986); *Laker v. Vallette* (*In re Toyota of Jefferson, Inc.*), 14 F.3d 1088, 1092-93 (5th Cir. 1994); *Mosier v. Ever-Fresh Food Co.* (*In re IRFM Inc.*), 52 F.3d 228, 231-32 (9th Cir. 1995); and *Marshack v. Orange Comm. Credit* (*In re Nat'l Lumber and Supply, Inc.*), 184 B.R. 74, 80-81 (B.A.P. 9th Cir. 1995).

The requirement that new value remain unpaid is critical to the sound policy that underlies section 547(c)(4).  As the Eleventh Circuit explained, the objectives of the new value defense are to (i) "encourage creditors to continue extending credit to financially troubled entities while discouraging a panic-stricken race to the courthouse," and (ii) "promote equality of treatment among creditors." *Jet Florida,* 841 F.2d at 1083.  "The subsequent advance exception promotes these general policy objectives 'because its utility is limited to the extent to which the estate was enhanced by the creditor's subsequent advances during the preference period.'" *Id.* at 1083-84 (citations omitted).

This reasoning applies squarely to the facts of this case.  After Defendant drew down on the $1 million LOC, Harris Bank set off the same amount from the Debtors' bank account.  Harris Bank had a secured interest in all of the Debtors' assets, including its bank account.  Thus, although the estate was temporarily enhanced by Defendant's provision of new value, that enhancement was eviscerated dollar for dollar by Defendant's draw-down of Debtor's $1 million letter of credit and Harris Bank's ensuing setoff against Debtor's bank account.

The net effect of Defendant's draw-down of the LOC was that the Debtor's estate was left in precisely the same position as if the new value had never been provided.  To permit Defendant the benefit of the new value defense under these circumstances would accord Defendant with an undeserved windfall, and therefore violate both of the policy objectives articulated by the Eleventh Circuit in *Jet Florida.*

The only three courts to consider this issue have held that a payment made under a letter of credit is to be treated in exactly the same fashion as if it were made directly by the debtor, thereby reducing the available new value defense.  "It is the impact on the estate and not the source of the payment that is determinative as to whether section 547(c)(4) is available as defense to a creditor who has received a preferential transfer.  If payment by a third party has the effect of removing from the estate the new value advanced, then the section 547(c)(4) exception is not and should not be available to the creditor." *Erman v. Armco, Inc.* (*In re Formed Tubes, Inc.*), 46 B.R. 645, 647 n.4 (Bankr. E.D. Mich. 1985); see also *Kroh Brothers*, 930 F.2d at 654; *Lease-A-Fleet, Inc. v. Morse Ops., Inc.* (*In re Lease-A-Fleet, Inc.*), 141 B.R. 853, 865 (Bankr. E.D. Pa. 1992).

Accordingly, based on the authority of *Jet Florida,* Defendant's new value defense must be reduced by the $1 million it was paid from its draw down of the LOC.

With respect to the Plaintiff's cross-motion for summary judgment, the facts concerning the Returns appear to be in dispute, and therefore cannot be adjudicated on a motion for summary judgment.  The issue of whether the value of the Returns should be deducted from the amount of the new value defense will be determined at trial.

## IV. **CONCLUSION**

For the reasons stated above, the Court concludes that Defendant's Motion should be DENIED and Plaintiff's Cross-Motion should be GRANTED in part by reducing the amount of the new value defense by the Defendant's $1 million draw down of the LOC, and DENIED in part as to the impact of the Returns on the new value defense. Accordingly, it is

ORDERED as follows:

1. The Defendant's new value defense shall not apply to the extent of its drawdown of a $1 million letter of credit by Defendant, and shall be accordingly reduced by $1 million.

2. The impact of the Returns on Defendant's new value defense shall be determined at trial.

# # #

Submitted by:
Mindy A. Mora (Florida Bar No. 678910)
Daniel Y. Gielchinsky (Admitted *Pro Hac Vice*)
BILZIN SUMBERG BAENA PRICE & AXELROD LLP
1450 Brickell Avenue
Suite 2300
Miami, Florida  33131-3456
Telephone:  (305) 350-2414
Facsimile:  (305) 351-2242
*Counsel for Plaintiff AASI Creditors Liquidating Trust,*
*by and through Kenneth A. Welt, as Liquidating Trustee*


Copies furnished to:
Daniel Y. Gielchinsky
*(Attorney Gielchinsky shall upon receipt serve a copy of this Order upon all interested parties and file a certificate of service)*